UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHARON HUGHES                                    CIVIL ACTION

VERSUS                                              NO. 23-1775

UBER TECHNOLOGIES, INC., ET          SECTION "R" (4)
AL.

## ORDER AND REASONS

Defendants Rasier, LLC ("Rasier") and Uber Technologies, Inc.
("Uber") move to dismiss or, alternatively, to compel arbitration and stay the
proceeding.[1]  Plaintiff opposes the motion.[2]  For the following reasons, the
Court grants in part and denies in part the motion.

## I.      BACKGROUND

Plaintiff Sharon Hughes brought this personal injury action, alleging
that she was injured while attempting to enter a vehicle operated by
defendant Briana Gordon.[3]  On December 21, 2022, plaintiff's daughter,
Alisha Hughes, requested a ride for her and plaintiff through Uber's "Rider
App," a software platform that allows users to request a vehicle when in need

---

[1]      R. Doc. 50.
[2]      R. Doc. 53.
[3]      R. Doc. 1-1.

of transportation services.[4]  Gordon was dispatched by Uber to pick up the
two women from the Marriott Hotel on Canal Street in New Orleans,
Louisiana.[5]  When Gordon arrived, she allegedly hit the vehicle's accelerator
while plaintiff had only one leg inside the car, knocking plaintiff to the
ground.[6]  Plaintiff further alleges that Gordon ran her over with the car when
she drove away.[7]  Plaintiff sued Gordon, Uber, Rasier, United Financial
Casualty Company, and GEICO Indemnity Company.[8]  According to
documents submitted by Uber, Gordon entered into an independent
contractor agreement with Rasier, a Delaware limited liability company
whose sole member is Uber.[9]  Plaintiff alleges that Uber and Rasier were
negligent in screening, hiring, training, monitoring, and supervising Gordon,
and that Uber and Rasier are vicariously liable for Gordon's negligent
actions.[10]  Plaintiff therefore asserts that Uber and Rasier are liable for
damages *in solido* with the other defendants under Louisiana law.[11]

---

[4]     R. Doc. 50-1 at 2-3.
[5]     *Id.* ¶¶ 3-4.
[6]     *Id.* ¶ 5.
[7]     *Id.*
[8]     R. Doc. 32.  The Court granted GEICO Indemnity Company's motion
        for summary judgment on December 11, 2023, dismissing GEICO from
        the action with prejudice.  R. Doc. 52.
[9]     R. Docs. 18 & 18-1.
[10]    R. Doc. 32 at 2-4.
[11]    *Id.* at 4.

Uber and Rasier now move to dismiss the action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, alternatively, to compel arbitration and stay the action.[12]  They assert that plaintiff is bound to arbitrate her claims under a binding arbitration agreement in Uber's Terms of Use.[13]  To use Uber's Rider App, individuals must first download the application and create an Uber Rider account.[14]  As part of this process, users must agree to Uber's Terms of Use, which Uber occasionally updates or amends.[15]  Users must agree to the updated or amended terms to continue using the Rider App.[16]  Uber and Rasier contend that before plaintiff's daughter requested the ride on the date of the incident, she had expressly agreed to and accepted Uber's December 2021 Terms of Use, as well as its Privacy Notice, which were available for her to access and review by hyperlink on a pop-up screen in the application.[17]  Specifically, when Uber updated its Terms of Use in December 2021, Uber Rider users were presented with a screen captioned, "We've updated our terms."[18]  In larger, bolded font was a statement encouraging users "to read

---

[12]    R. Doc. 50.
[13]    R. Doc. 50-1.
[14]    *Id.* at 3.
[15]    *Id.*
[16]    *Id.*
[17]    *Id.* at 3-4.
[18]    R. Doc. 50-3 at 5.

[Uber's] updated Terms in full."[19]   Below this statement were separate hyperlinks to the Terms of Use and Privacy Notice.[20]   Users were then required to check a box and click "Confirm" in order to continue past the blocking pop-up screen and use the application.[21]  Next to the checkbox was the following bolded statement: "**By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice.**"[22]   Uber's records reflect that plaintiff's daughter checked the box and clicked the "Confirm" button on January 14, 2022, thereby assenting to the December 2021 Terms of Use.[23]

The Terms of Use contain a section captioned "Arbitration Agreement."[24] This section begins: "By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action."[25]   The Arbitration Agreement covers any disputes, claims, or controversies related to "incidents or accidents resulting in

---

[19]     *Id.*
[20]     *Id.*
[21]     *Id.*
[22]     *Id.*
[23]     *Id.* at 3, 6.
[24]     *Id.* at 9-17.
[25]     *Id.* at 9.

4

personal injury to you or anyone else that you allege occurred in connection with your use of the Services, . . . regardless of whether you allege that the personal injury was experienced by you or anyone else."[26]  The Agreement further provides that the Federal Arbitration Act ("FAA") governs both the interpretation and enforcement of dispute resolution procedures, and that any dispute, claim, or controversy arising out of an incident or accident resulting in personal injury shall be governed by the laws of the state in which the incident or accident occurred.[27] The Arbitration Agreement also contains a delegation clause, which provides that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable."[28]

Section 2(a)(5) of the Arbitration Agreement states that it applies to third-party claims:[29]

> **<u>Application to Third Parties</u>**: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your

---

[26]   *Id.*
[27]   *Id.* at 14.
[28]   *Id.* at 12-13.
[29]   *Id.* at 13.

5

> spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

The arbitration provisions in the December 2021 Terms of Use were in effect at the time plaintiff and her daughter called for the ride on the date of the incident.

Based upon the Arbitration Agreement and the Application to Third Parties provision, Uber and Rasier assert that plaintiff is a thirty-party beneficiary who is bound to arbitrate her claims.[30]  They thus contend that the exclusive forum to adjudicate plaintiff's claims is in arbitration and that the claims must be dismissed without prejudice for lack of subject-matter jurisdiction or stayed to permit the parties to arbitrate.[31]  Plaintiff responds that her claims against Uber and Rasier do not fall within the scope of the Arbitration Agreement.[32]

The Court considers the parties' arguments below.

---

[30]    R. Docs. 50 & 50-1.
[31]    R. Doc. 50-1 at 7.
[32]    R. Doc. 53 at 5-6.

## II.   LEGAL STANDARD

The FAA, 9 U.S.C. §§ 1-16, expresses a strong federal policy in favor of enforcing arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted). Section 3 of the FAA provides that if any suit is brought in federal court "upon any issue referable to arbitration," the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  The Supreme Court has directed courts to "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter*, 470 U.S. at

221).  The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218.  Additionally, "any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer*, 422 F.3d at 294.

To determine whether to compel the parties to arbitrate, the Court must conduct a two-step inquiry. *Id.* at 293.  First, the Court must determine whether the parties agreed to arbitrate the disputes in question. *Id.*  This determination ordinarily involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*  But when, as here, the parties' agreement contains a delegation clause,[33] the Court simply analyzes whether there is a valid agreement, and, if so, whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019).  Second, if the Court determines that the parties have agreed to arbitrate the dispute in question, it "then must determine 'whether legal constraints external to the parties' agreement

---

[33]    R. Doc. 50-3 at 12-13.

foreclosed the arbitration of those claims.'"   *Id.* (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, [it] shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."   9 U.S.C. § 4.   When the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration, *id.* § 3, or dismiss the claims.   *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright.").

The movants seeking to compel arbitration bear the initial burden of proving that an arbitration agreement exists by a preponderance of the evidence.   *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005) (per curiam)).   If a valid arbitration agreement exists, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."   *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III.   DISCUSSION

### A.   Validity of the Arbitration Agreement

In determining whether there is a valid agreement to arbitrate, the Court must apply ordinary state-law principles of contract. *Will-Drill Res. Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003); *see also Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) ("Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." (citation and internal quotation marks omitted)).  The parties agree that Louisiana law governs this dispute.[34]    In Louisiana, the law's favorable treatment of arbitration agreements "[echoes] the Federal Arbitration Act." *Aguillard v. Auction Mgmt. Corp.*, 908 So. 2d 1, 7 (La. 2005); *see also Duhon v. Activelaf, LLC*, No. 2016-CC-0818, 2016 WL 6123820, at *3 (La. Oct. 19, 2016) ("Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts."); *id.* (noting that "federal jurisprudence interpreting the FAA may be considered in construing the [Louisiana Binding Arbitration Law ("LBAL")]"); La. Rev. Stat. Ann. §§ 9:4201, 9:4202 (expressing strong

---

[34]    R. Doc. 50-1 at 10; R. Doc. 53 at 21.

legislative policy favoring arbitration in LBAL).  Louisiana law requires that a valid and enforceable arbitration agreement contain the elements of offer and acceptance.  La. Civ. Code Ann. art. 1927.  Additionally, under Louisiana law, formation of a valid contract requires four elements: "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose."  *Provenza v. Cent. & Sw. Servs., Inc.*, 775 So. 2d 84, 89 (La. App. 2 Cir. 2000) (citing La. Civ. Code Ann. arts. 1918, 1227, 1966 & 1977).

Here, the parties do not dispute that plaintiff's daughter, who called the Uber on the night of the incident using her Uber Rider account, entered into a valid and binding agreement with Uber to arbitrate.  And Uber's records show that plaintiff's daughter expressly agreed to Uber's December 2021 Terms of Use on January 14, 2022, by checking the box next to a statement indicating that she had reviewed and agreed to the Terms of Use, and then clicking "Confirm."[35]  Courts in this circuit have held that this form of notice and consent, known as a "clickwrap agreement,"[36] suffices to bind

---

[35]  R. Doc. 50-3 at 5-6.

[36]  This is a type of contract allows an individual to agree electronically to the terms of a contract by selecting an "I agree" box after being presented with a list of terms and conditions of use.  It often "appears on an internet webpage and requires that a user consent to its terms or

individuals to the hyperlinked terms and conditions under Louisiana law. *See, e.g.*, *Express Lien, Inc. v. Handle, Inc.*, No. 19-10156, 2021 WL 2476853, at *4 (E.D. La. June 17, 2021) (collecting cases) (noting that this finding "is consistent with Louisiana law holding that 'signatures are not mere ornaments' and that 'a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it'" (cleaned up)); *Deshotel v. PayPal, Inc.*, No. 19-0373, 2020 WL 5813322, at *7 (W.D. La. Aug. 24, 2020) (collecting cases upholding clickwrap agreements). This conclusion also comports with Louisiana statutory law, which gives legal effect to both electronic contracts and signatures. *See* La. Rev. Stat. Ann. § 9:2607. Thus, a valid arbitration agreement exists between Uber and plaintiff's daughter.

### B.    Application to Plaintiff's Claims

The parties dispute whether plaintiff, as a non-signatory to the Arbitration Agreement or the Terms of Use, must also arbitrate her claims against Uber and Rasier. Generally, in order to be subject to arbitral

---

conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002).

jurisdiction, the party must be a signatory to a contract containing an arbitration clause. *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 354 (5th Cir. 2003); *see also Lakeland Anesthesia, Inc. v. CIGNA Healthcare Grp. of La., Inc.*, 812 So. 2d 695, 698 (La. App. 4 Cir. 2002) (recognizing general rule that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *Courville v. Allied Profs. Ins. Co.*, 218 So. 3d 144, 148 (La. App. 1 Cir. 2017) ("Generally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." (citation omitted)). But the United States Supreme Court in *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009), recognized that non-signatories to arbitration agreements may sometimes be compelled to arbitrate their claims. The Court clarified that while the FAA "creates substantive federal law regarding the enforceability of arbitration agreements, . . . background principles of state contract law" control the interpretation of the scope of such agreements, "including the question of who is bound by them." *Id.* at 630.

Under Louisiana law, a contractual arbitration agreement may be enforced by or against nonparties to the contract through assumption, incorporation by reference, agency, veil-piercing/alter ego, third-party beneficiary theories, and estoppel. *See Traders' Mart, Inc. v. AOS, Inc.*, 268

So. 3d 420, 427 (La. App. 2 Cir. 2019); *see also GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020) (recognizing same theories under traditional principles of state law). Thus, if the written Arbitration Agreement contained in the December 2021 Terms of Use is "made enforceable against (or for the benefit of) a third party" such as plaintiff under one of these Louisiana contract law theories, plaintiff's claims against Uber and Rasier must be referred to arbitration. *Carlisle*, 556 U.S. at 631 & 631 n.6.

Here, Uber and Rasier attempt to compel plaintiff to arbitrate her claims under a third-party beneficiary theory. In support of this theory, Uber and Rasier rely on the "Application to Third Parties" provision in the Arbitration Agreement, which purports to extend the arbitration requirement to "any third parties," including "third-party beneficiaries," when their underlying claims arise out of or relate to the use of Uber's services.[37] Uber and Rasier assert that although plaintiff was not a signatory to a written arbitration agreement, she is nevertheless bound to arbitrate her claims under this provision as the mother of the Rider App account holder

---

[37]   R. Doc. 50-3 at 13.

and an intended passenger in Gordon's car, thus making her a third-party beneficiary.[38]

Parties are generally presumed to contract and stipulate for themselves only and not for third parties.  *Liquid Drill, Inc. v. U.S. Turnkey Expl., Inc.*, 48 F.3d 927, 931, 933 (5th Cir. 1995) (citing *Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.*, 37 So. 980, 984 (La. 1905)).  In limited circumstances, however, Louisiana law recognizes that "[a] contracting party may stipulate a benefit for a third party called a third party beneficiary."  La. Civ. Code Ann. art. 1978.  This type of contract provision is known under Louisiana law as a "stipulation *pour autrui*."  *Joseph v. Hosp. Serv. Dist. No. 2*, 939 So. 2d 1206, 1212 (La. 2006) (citation omitted).  The Supreme Court of Louisiana has recognized three criteria for determining whether contracting parties have created a stipulation *pour autrui*: (1) "the stipulation for a third party is manifestly clear," (2) "there is certainty as to the benefit provided the third party," and (3) "the benefit is not a mere incident of the contract between the promisor and the promisee."  *Id.* Additionally, while stipulations *pour autrui* are favored in Louisiana, *Andrepont v. Acadia Drilling Co.*, 231 So. 2d 347, 361-62 (La. 1969), they are

---

[38]    R. Doc. 50-1 at 12-14.

never presumed.  *Joseph*, 939 So. 2d at 1212 (citing La. Civ. Code Ann. art. 1831).

"The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof."  *Id.* (citations omitted); *see also Liquid Drill*, 48 F.3d at 931 ("The existence of a stipulation *pour autrui* depends on the intention to create it.").  When there is no ambiguity within the four corners of the contract as to whether it creates a stipulation in favor of a third party, the contract must be interpreted as a matter of law, and the Court may not look to extrinsic evidence to determine the common intent of the parties.  La. Civ. Code Ann. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *see also Wooley v. Lucksinger*, 61 So. 3d 507, 558 (La. 2011) ("When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." (citations and internal quotation marks omitted)); *Invs. Assocs. Ltd. v. B.F. Trappey's Sons Inc.*, 500 So. 2d 909, 912 (La. App. 3 Cir. 1987) ("Contracts, subject to interpretation from the instrument's four corners without the necessity of

16

extrinsic evidence, are to be interpreted as a matter of law.  The use of extrinsic evidence is proper only when the contract is ambiguous after an examination of the four corners of the agreement." (citations omitted)); *Rodriguez v. Olin Corp.*, 780 F.2d 491, 497 (5th Cir. 1986) ("Under Louisiana law, where uncertainty or ambiguity exist as to the provisions of a contract, or where the intent of the parties cannot be ascertained from the language employed, resolution of the ambiguity is a question of fact for the jury, and parol evidence regarding the parties' intent is admissible." (citation omitted)).

Here, the unambiguous terms of the December 2021 Terms of Use reflect the parties' intention to confer a benefit upon third parties such as plaintiff.  The primary purpose of the contract between Uber and plaintiff's daughter is to allow the daughter, as the registered Rider App user, "to conveniently find, request, or receive transportation, logistics and/or delivery services from third-party providers that meet [her] needs and interests."[39]  As part of her use of Uber's transportation services, plaintiff's daughter is permitted to be accompanied by guest riders.  Indeed, the Terms of Use include a section entitled "Access and Use of the Services," which expressly contemplates the use of Uber's transportation services by guest

---

[39]     R. Doc. 50-3 at 8.

riders as part of the services rendered under the contract.[40]  The contract permits the account holder to allow persons over eighteen to receive transportation services under the account but prohibits guest users under eighteen unless they are accompanied by the account holder.[41]  This section also includes a hyperlink to Uber's Community Guidelines, which provide: "When driving with Uber, no one other than the driver, the requesting rider, *and the rider's guests* should be in the vehicle."[42]  Thus, in considering the entirety of the Terms of Use and in light of surrounding circumstances, it is manifestly clear that the parties intended to stipulate the benefit of transportation services in favor of third party guest riders such as plaintiff under the Terms of Use.  *See Allen & Curry Mfg. Co. v. Shreveport Waterworks Co.*, 37 So. 980, 984 (La. 1905) (holding that the intent of establishing an advantage for the third party need not be express, but may be implied from a consideration of the whole contract and in light of surrounding circumstances); *accord C.H. Leavell & Co. v. Glantz Contracting Corp. of La.*, 322 F. Supp. 779, 783 (E.D. La. 1971); *In re Katrina*

---

[40]   *See id.* at 19.

[41]   *Id.* (stating the protocol when a child accompanying the registered user requires a car seat).

[42]   *Id.* (hyperlink to Uber Community Guidelines, https://www.uber.com/legal/en/document/?name=general-community-guidelines&country=united-states&lang=en).

*Canal Breaches Consol. Litig.*, No. 05-4182, 2010 WL 11541602, at *6 (E.D. La. Apr. 1, 2010).  Because there is no ambiguity as to the parties' intention to confer a benefit upon third parties, extrinsic evidence, including the affidavits of plaintiff and her daughter,[43] is not considered.

Plaintiff nevertheless contends that the contract does not manifest a clear intention to benefit her because it contains no definition of a "third-party beneficiary," nor does it identify either plaintiff, specifically, or a guest passenger, generally, as a third-party beneficiary of Uber's services.[44]  This argument is without merit because the Louisiana Supreme Court has held that it is not a requirement of a stipulation *pour autrui* that the beneficiaries are named in the contract.  *Dartez v. Dixon*, 502 So. 2d 1063, 1066 (La. 1987) (recognizing that it is not a requirement of a *stipulation pour autrui* that the beneficiaries are determinable on the date of the contract); *Andrepont*, 231 So. 2d at 361-62 ("The contention that the third party was not named is without merit." (citing Planiol, *Traité Élémentaire De Droit Civil*, No. 1236 (1959) ("Can one stipulate for undetermined persons?  Yes, on the condition that the beneficiaries of the stipulation, at present undetermined, are determinable on the day on which the agreement is to have effect for their

---

43    R. Docs. 53-1 & 53-2.
44    R. Doc. 53 at 8.

benefit.")")); *see also Fairbanks v. Tulane Univ.*, 731 So. 2d 983, 987 (La. App. 4 Cir. 1999) ("A stipulation *pour autrui*, favored in our law, may be for the benefit of undetermined persons, so long as the third party beneficiaries are determinable on the day on which the agreement is to have effect for their benefit."). Thus, "that the parties did not specifically name [plaintiff] in the [contract] as [a] third-party beneficiar[y] is of no consequence because [Louisiana] jurisprudence recognizes that parties to a contract may make a stipulation *pour autrui* in favor of undetermined persons." *Cooper v. La. Dep't of Pub. Works*, 870 So. 2d 315, 331 (La. App. 3 Cir. 2004) (citations omitted). The Court therefore finds that the contract manifests a clear intention to make plaintiff a third-party beneficiary.

As to the second factor, there is certainty as to the benefit provided to plaintiff under the contract. *See Joseph*, 939 So. 2d at 1212 ("[T]here must be certainty as to the benefit to accrue to the beneficiary." (citation and internal quotation marks omitted)). Plaintiff benefitted from her daughter's agreement with Uber by using the transportation services requested by her daughter. And plaintiff clearly intended to use and benefit from the transportation services as a guest passenger in a vehicle hailed under her daughter's account. Thus, in creating a stipulation in favor of plaintiff, the Terms of Use confer the certain benefit of transportation services on plaintiff.

*See id.* (noting that the second factor "is a corollary of the requirement of a manifestly clear stipulation").

Furthermore, the benefit conferred upon plaintiff as the beneficiary of these transportation services is not "merely incidental to" the contractual agreement between Uber and plaintiff's daughter. *Liquid Drill*, 48 F.3d at 932. The Supreme Court of Louisiana has recognized that "[n]ot every promise, performance of which may be advantageous to a third person, will create in him an actionable right." *Joseph*, 939 So. 2d at 1212 (citation and internal quotation marks omitted). "The benefit to the third party must be a direct benefit," and "that direct benefit to the third party [must] form[ ] the condition or consideration for the contract." *Liquid Drill*, 48 F.3d at 932; *see also Chevron, U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir. 1993) ("[T]he third-party benefit must form the condition or the consideration of the contract in order for it to be a stipulation *pour autrui*." (citation and internal quotation marks omitted)). As discussed, the primary purpose of the Terms of Use is to allow plaintiff's daughter to utilize Uber's transportation services.[45]   And permitting plaintiff to accompany her daughter is part of the consideration for her daughter's agreement to use

---

[45]   R. Doc. 50-3 at 8.

Uber's services.  Accordingly, the Court finds a direct benefit conferred upon guest riders such as plaintiff that is not merely incidental to the Terms of Use.

For these reasons, the Court finds that plaintiff is a third-party beneficiary of her daughter's contractual agreement with Uber.  Because plaintiff's claims against Uber and Rasier pertain to injuries she sustained while attempting to enter a vehicle dispatched by Uber to provide plaintiff and her daughter with transportation services, it is apparent that her claims "arise out of or relate to" the use of Uber's services.  Therefore, plaintiff's claims against Uber and Rasier are covered by the Arbitration Agreement, and she is bound to arbitrate these claims in accordance with the December 2021 Terms of Use.[46]

### C.    Stay Pending Arbitration

Having found that plaintiff's claims against Uber and Rasier are subject to a binding arbitration agreement and, therefore, must be submitted to arbitration, the Court must now determine whether to dismiss the claims or stay the action pending arbitration.  Section 3 of the FAA provides that, when claims are properly referable to arbitration, the Court "shall[,] on application of one of the parties[,] stay the trial of the action until such

---

[46]    *Id.* at 13.

arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Here, Uber and Rasier have applied for a stay pending arbitration, and such a stay is mandatory under section 3. Although they sought dismissal in the alternative, dismissal is discretionary, not mandatory. *See Apache Bohai Corp. LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) ("[D]istrict courts have discretion to dismiss cases in favor of arbitration."); *Gilbert v. Donahoe*, 751 F.3d 303, 306-07 (5th Cir. 2014) (recognizing that "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration"). The Court may dismiss the case in favor of arbitration only if all of the issues and claims raised are subject to arbitration, in which case "retaining jurisdiction and staying the action [would] serve no purpose." *Alford*, 975 F.2d at 1164. Plaintiff's claims against the two other remaining defendants, Gordon and United Financial, may be litigated without arbitration. Therefore, the Court finds that a stay, not dismissal, of the action against Uber and Rasier is proper.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Uber and Rasier's motion to dismiss or, alternatively, to compel arbitration and stay the proceeding.  The Court GRANTS the request to compel arbitration and to stay the proceeding, but DENIES the requests to dismiss the case.  This case shall be STAYED pending arbitration only as to defendants Uber and Rasier.  The Court shall retain jurisdiction over plaintiff's claims against defendants Gordon and United Financial.

New Orleans, Louisiana, this __21st__ day of February, 2024.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

24